580 S.E.2d 159

The STATE, Respondent,

v.

Oscar Roy PADGETT, Appellant.

No. 3608.

Court of Appeals of South Carolina.

Heard Feb. 11, 2003.

Decided March 10, 2003.

Rehearing Denied April 22, 2003.

Senior Assistant Appellate Defender Wanda H. Haile, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

ANDERSON, J.:

Oscar Roy Padgett was convicted of failure to stop for a blue light. The trial court sentenced him to a three-year term of imprisonment. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On October 31, 2000 at approximately 8:30 p.m., Officer Gerard Grenier of the Ridge Spring Police Department observed a black Mustang parked at the gasoline pumps at Kent's Corner Gas Station on the corner of Highway 23 and Pecan Grove Road in Ridge Spring. Officer Grenier recognized the vehicle as the same one he had stopped two months

earlier for a license tag violation. Padgett was driving the vehicle at the time of the prior stop and had explained to Officer Grenier that he had purchased it only a few days earlier.

Officer Grenier testified that, on the night in question, he saw Padgett get into the vehicle and decided to follow Padgett to ascertain whether he had obtained proper tags for the car. As he "squared off" behind the Mustang on Highway 23, Officer Grenier noticed that no license tags were affixed to the vehicle and, therefore, activated his patrol car's blue lights. He stated the driver of the vehicle did not stop in response to the blue lights, but rather drove slowly for a time, turned onto Trojan Road, accelerated the vehicle, and crossed over Highway 1 into Aiken. According to Officer Grenier, he pursued Padgett with his siren and blue lights on for about three-fourths of a mile outside of Ridge Spring, then terminated the pursuit. He returned to Kent's Corner and questioned the store manager regarding the identity of the person driving the black Mustang. The manager informed Officer Grenier that the driver was Oscar Padgett. Thereafter, Officer Grenier obtained a warrant for Padgett's arrest.

Officer Leroy Smith, who was on patrol with Grenier the night of the pursuit, verified Officer Grenier's account of the events. In particular, Officer Smith confirmed that Officer Grenier turned on the patrol car's blue lights before Padgett turned onto Trojan Road and, thus, before he left the Ridge Spring city limits.

At the close of the State's case, Padgett moved for a directed verdict of acquittal based generally on lack of sufficient evidence. The trial court denied the motion.

Padgett declared he was not in Ridge Spring on the night of October 31, 2000. He further asserted the transmission on his black Mustang was malfunctioning at the time and had been parked in his back yard.

At the close of evidence, Padgett renewed his motion for a directed verdict. The trial court again denied the motion. The jury returned a guilty verdict.

### STANDARD OF REVIEW

On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most

favorable to the State. *State v. Walker,* 349 S.C. 49, 562 S.E.2d 313 (2002); *State v. Morgan,* 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002). When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. McLauren,* 349 S.C. 488, 563 S.E.2d 346 (Ct.App.2002). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McKnight,* 352 S.C. 635, 642, 576 S.E.2d 168 (2003) ; *State v. McHoney,* 344 S.C. 85, 544 S.E.2d 30 (2001). However, if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Harris,* 351 S.C. 643, 572 S.E.2d 267 (2002); *State v. Condrey,* 349 S.C. 184, 562 S.E.2d 320 (Ct.App.2002).

## *LAW/ANALYSIS*

### I.  Jurisdiction of Law Enforcement Officer

Padgett asserts the trial court erred in failing to direct a verdict of acquittal on the charge of failure to stop for a blue light due to the lack of jurisdiction on the part of the pursuing officer. Padgett claims the officer did not turn on his blue lights until he was "outside the corporate limits according to the city map."

The polestar of the factual inquiry in this case is a determination of when the law enforcement activity began and whether it originated in the town limits.

South Carolina Code Ann. § 17–13–40 (Supp.2001) provides, in relevant part:

Law enforcement officer jurisdiction when in pursuit of offender; authority, rights, privileges, and immunities extended.

(A) When the police authorities of a town or city are in pursuit of an offender for a violation of a municipal ordinance or statute of this State committed within the corporate limits, the authorities may arrest the offender, with or without a warrant, at a place within the corporate limits, at a place within the county in which the town or

city is located, or at a place within a radius of three miles of the corporate limits.

■ Padgett correctly notes that section 17–13–40(A), by its terms, operates to limit the jurisdictional authority of town and city police officers to effectuate arrests. However, the mere fact that there existed some question as to whether the officers in the instant case were operating outside of their jurisdictional limitations does not automatically give rise to the propriety of a directed verdict on the issue. To the contrary, the facts and circumstances attendant to this case present quintessential factual issues regarding the exercise of the statutory grant of jurisdiction.

■ The officers' testimony that they initiated the attempted traffic stop inside the Ridge Spring city limits, standing alone, constituted sufficient evidence to defeat Padgett's motion for a directed verdict on the ground the officers lacked jurisdiction to make the stop. *Cf. State v. McAteer,* 340 S.C. 644, 646, 532 S.E.2d 865, 866 (2000) (concluding that "[s]ince the officer was outside the municipality's city limits when he first observed petitioner, he had no police authority to detain him."). In ruling on the motion for a directed verdict, the trial judge properly limited his inquiry to the existence or nonexistence of evidence tending to establish the officers operated within the confines of section 17–13–40(A), not the weight of that evidence. *See State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984). The trial court did not err in denying Padgett's motion for a directed verdict.

## II.  Reasonable Suspicion to Warrant Traffic Pursuit

Padgett contends the trial court erred in failing to grant his motion for a directed verdict on the charge of failure to stop for a blue light due to the lack of reasonable suspicion to warrant the traffic pursuit. We disagree.

The dissenting opinion in *State v. Jihad,* 342 S.C. 138, 536 S.E.2d 79 (Ct.App.2000) (Anderson, J., dissenting), *majority opinion rev'd on other grounds,* 347 S.C. 12, 553 S.E.2d 249 (2001), articulated:

A police officer may conduct a constitutionally valid traffic stop when the officer has a reasonable suspicion that either the vehicle or an occupant is subject to seizure for violation of the law. *See Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct.

1391, 59 L.Ed.2d 660 (1979). As long as an officer reasonably suspects the driver is violating "any one of the multitude of applicable traffic and equipment regulations," the police officer may legally stop the vehicle. *Id.* at 661, 99 S.Ct. at 1400, 59 L.Ed.2d at 672. Reasonable suspicion is a lesser standard than probable cause and allows an officer to effectuate a stop when there is some objective manifestation of criminal activity involving the person stopped. *See United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Reasonable suspicion exists when an officer can identify specific facts that, when taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that the detainee has committed (or is committing) a crime. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The propriety of a stop must be viewed in light of the totality of the surrounding circumstances. *See United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

No further inquiry beyond the requirement of reasonable suspicion is necessary or warranted. *State v. Carlson,* 102 Ohio App.3d 585, 657 N.E.2d 591 (1995). Thus, if the specific and articulable facts available to an officer indicate a motorist may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making the stop. *Id.* Similarly, the United States Supreme Court has concluded an officer's subjective motive does not invalidate behavior that is objectively justified under the Fourth Amendment. *See Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (police officer may stop driver for any observed traffic offense even if officer's motivation for making stop is unrelated to observed traffic offense). To satisfy the reasonable suspicion standard, the State is not required to prove the suspected motor vehicle violation occurred. *State v. Williamson,* 138 N.J. 302, 650 A.2d 348 (1994); *see also Marben v. State of Minnesota, Dep't of Pub. Safety,* 294 N.W.2d 697 (Minn.1980) (an actual traffic violation need not be detectable; all that is required is that the stop be not the product of mere whim, caprice, or idle curiosity).

*Jihad,* 342 S.C. at 147–48, 536 S.E.2d at 83–84.

■ Pursuant to South Carolina Code Ann. § 56–3–1240 (Supp.2002), "[i]t is unlawful to operate or drive a motor

vehicle with the license plate missing and a person who is convicted for violating this section must be punished as provided by Section 56–3–2520." Officer Grenier testified he noticed that the vehicle he pursued on October 31, 2000 did not have a license tag affixed to it. Because the mere act of driving a vehicle without a license plate is a chargeable offense, Officer Grenier's observation that the plate was missing from the vehicle constituted reasonable suspicion to initiate the traffic stop. The fact that Officer Grenier was prompted to check for the missing license plate by his recollection of a prior stop of the same vehicle does not negate the existence of reasonable suspicion to initiate the stop when he actually observed Padgett committing a traffic offense on the night in question. Concomitantly, we find the case was properly submitted to the jury.

## CONCLUSION

Accordingly, for the foregoing reasons, Padgett's conviction is

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.