649 S.E.2d 145

**The STATE, Respondent,**

v.

**John Henry WARD, Appellant.**

**No. 4270.**

Court of Appeals of South Carolina.

Heard May 7, 2007.

Decided June 29, 2007.

Rehearing Denied Aug. 24, 2007.

608

William J. Watkins, Jr. of Greenville, and Chief Attorney Joseph L. Savitz, III, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody Brown, of Columbia, for Respondent.

HEARN, C.J.

John Henry Ward appeals his murder conviction, arguing the trial court erred by (1) refusing to grant a mistrial after the State insinuated the crime revolved around gang activity, (2) permitting autopsy photos to be admitted, (3) charging the jury that "the hand of one is the hand of all," (4) refusing to grant a directed verdict in Ward's favor, and (5) allowing the State to play a recording of a co-defendant's testimony from a prior trial. We affirm.

## FACTS

During the early morning hours of May 11, 2003, Jamie Simmons was fatally wounded when a gunfight broke out in the parking lot area of Club Diamante in Charleston County. Simmons, who had the misfortune of stopping outside the club on his way home from work to speak with his cousin, had not been involved in the altercation. Instead, the tragedy resulted from a long-running feud between residents of two communities—the Petersfield community and the Cherry Hill community. This particular fight erupted when John Campbell, a man from Cherry Hill, danced with the girlfriend of Keith Richards, a man from Petersfield. The fight began indoors, but moved outdoors where it continued to escalate.

Once outdoors, Campbell ran to a truck where his cousin, Kevin Dunmeyer, was waiting to give Campbell a ride home. As Campbell tried to flee the scene, a group of Petersfield men, which included Appellant Ward and his co-defendant Tremayne Washington, confronted Dunmeyer and Campbell. Dunmeyer was separated from his vehicle, so he attempted to flee on foot. As he ran, he was chased by a group of Petersfield men. Dunmeyer was rescued by Antonio Washington, a compatriot from the Cherry Hill community, who

drove toward Dunmeyer and attempted to run over anyone from Petersfield who was in the way.

Meanwhile, Appellant Ward, co-defendant Washington, and Catrell Douglas, leapt into a truck and chased after Antonio Washington and Dunmeyer. Before the Petersfield contingent got into the truck, a witness heard co-defendant Washington declare: "We will handle that," and "some bitch is going to die tonight." As the two vehicles left the parking lot, heavy gunfire erupted. Later, investigators found shell casings from three different types of guns: a .40–caliber, a 9–millimeter, and a .25–caliber. Forensic experts determined it was a 9–millimeter bullet that struck and killed Simmons.

The State initially tried Ward for the murder of Simmons in December of 2004; the case ended in a mistrial due to a hung jury. Ward was tried again in June of 2005, this time with Tremayne Washington. The two were tried together as accomplices under the theory that both were guilty because "the hand of one is the hand of all."

At this second trial, numerous witnesses testified regarding the shooting. One witness, James Murphy, remembered that Simmons fell to the ground as soon as the gunfire began but before any shots came from the truck in which Ward rode. Murphy stated that he thought he saw shots fired from the passenger side of the truck. Catrell Douglas, the driver of the truck, testified that Ward fired gunshots out of the window. Although co-defendant Washington did not testify during the second trial, the jury heard testimony from Ward's first trial, wherein Washington indicated Ward had fired shots toward the other vehicle.

When investigators searched the truck, they found an empty holster, a shell casing, an unfired bullet, and magazines, but did not find a gun. At trial, no weapon was introduced into evidence, though records revealing that co-defendant Washington owned a 9–millimeter pistol were entered.

The jury convicted both Ward and Washington, and they were sentenced to thirty years' imprisonment. This appeal followed.

## LAW/ANALYSIS

Ward argues the trial court erred by (1) refusing to grant a mistrial after the prosecutor insinuated the crime revolved

around gang activity, (2) permitting autopsy photos to be admitted, (3) charging the jury that "the hand of one is the hand of all," (4) refusing to grant a directed verdict in Ward's favor, and (5) allowing the State to play a recording of a co-defendant's testimony from a prior trial. We address each issue in turn below.

## I. Insinuation of Gang Activity

■ Ward first argues he is entitled to a new trial because the State repeatedly suggested that he was a gangster, and this insinuation infected the trial with prejudice that denied him due process of the law. We disagree.

The comments about which Ward complains first occurred during opening statements when the prosecutor described the victim as someone who "was not a drinker, was not a drug user, [and] was not a gang banger." Unlike the victim, Ward and his co-defendant were described by the prosecutor as drinkers who "were beating their chest[s] and they [had] something to prove that night." According to Ward, this contrasting description of the victim and the defendants implied that the defendants were "drinking and gang banging at the club." Ward also complains that the prosecutor described the fight as being between "a gang of" people from the Cherry Hill community and "a bunch of Petersfield people," and later told the jury that Ward was from Petersfield. However, Ward made no objection to the solicitor's opening argument.

Later in the trial, Kevin Dunmeyer testified that when he attempted to get into his vehicle, there "was a gang of guys at my door." In response to this testimony, the prosecutor asked, "A gang of guys at your door. Where was this gang of guys from?" Dunmeyer answered, "[The] Petersfield area." Again, Ward did not object to this testimony.

Sometime after Dunmeyer testified, a crime scene investigator testified about the discharge of shell casings. The prosecutor asked if the way bullets ejected depended on whether the weapon was held "straight up" or in a "gangster hold." This time, Ward objected. Then, during the cross-examination of a defense expert, the prosecutor again asked about a method of shooting known as "gangster style." Ward's co-

defendant objected, and the trial court sustained the objection, advising the jury to disregard the comment. After the defense expert testified, no other witness was called to the stand. Ward moved for a mistrial based on the State's implication that the defendants were gangsters. The trial court denied the motion, but directed the prosecutor to refrain from mentioning gangs in his closing.

"The decision to grant or deny a mistrial is within the sound discretion of the trial judge." *State v. Adams,* 354 S.C. 361, 376, 580 S.E.2d 785, 793 (Ct.App.2003). A mistrial should only be granted when "absolutely necessary," and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. *State v. Stanley,* 365 S.C. 24, 34, 615 S.E.2d 455, 460 (Ct.App.2005).

Here, we find no abuse of discretion. Ward failed to object to most of the references about which he now complains. In fact, the only objection preserved for our review came when the prosecutor asked the crime scene investigator if the ejection of bullets depended on whether the shooter held the weapon "straight up" or in a "gangster hold." The other references came in without objection or were objected to by Ward's co-defendant, and therefore are not preserved for review. *See Tupper v. Dorchester County,* 326 S.C. 318, 324 n. 3, 487 S.E.2d 187, 190 n. 3 (1997) (explaining that appellant cannot bootstrap an issue for appeal by way of a co-defendant's objection). We do not believe the isolated reference to which Ward objected warranted the grant of his motion for a mistrial, nor do we believe the combination of references which were unobjected to would require the trial court to grant the motion.

Black's Law Dictionary (8th Ed.2004) defines a gang as "[a] group of persons who go about together or act in concert, esp. for antisocial or criminal purposes." Certainly, the groups of people on both sides of this altercation outside of Club Diamante could be referred to as gangs considering their actions that evening. Furthermore, the term "gangster style" described the way the gun may have been fired—from a horizontal position rather than from the normal, vertical position. *See* Urban Dictionary, *available at* http://www.urban dictionary.51fcom ("To hold a gun horizontally instead of the way it is normally supposed to be held vertically."). Because

the State's references to gangs were not completely gratuitous and were unobjected to for the most part, we find no error in the trial court's refusal to grant a mistrial.

## II. Autopsy Photographs

■ Ward next argues the trial court erred in permitting the prosecution to enter photographs of the victim's wounds into evidence. We disagree.

■ The relevance, materiality and admissibility of photographs are matters within the sound discretion of the trial court, and a ruling regarding photographs' admissibility will not be disturbed absent an abuse of discretion. *State v. Rosemond*, 335 S.C. 593, 596, 518 S.E.2d 588, 589–90 (1999). "To constitute unfair prejudice, the photographs must create 'an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'" *State v. Jackson*, 364 S.C. 329, 334, 613 S.E.2d 374, 376 (2005) (quoting *State v. Alexander*, 303 S.C. 377, 382, 401 S.E.2d 146, 149 (1991)). "[P]hotographs which are calculated to arouse the sympathies or prejudices of the jury should be excluded from the guilt phase of a [trial] if they are irrelevant or not substantially necessary to show material facts or conditions." *State v. Kornahrens*, 290 S.C. 281, 288, 350 S.E.2d 180, 185 (1986).

Here, the trial court allowed two photographs which illustrated graze wounds on the victim's back. Ward objected, arguing the probative value of the photographs was outweighed by their prejudicial effect. The trial court overruled the objection, finding the jury's knowledge of the graze wound was necessary to rebut the defense's arguments about the angle of the shot, and therefore the photographs' probative value outweighed their prejudicial effect. This determination is left to the discretion of the trial court, and the record evinces no abuse of that discretion.

## III. Jury Charge on "The Hand of One Is the Hand of All"

■ Ward also argues the trial court erred by charging the jury that "the hand of one is the hand of all." We disagree.

■ The trial court is required to charge only the current and correct law of South Carolina. *Sheppard v. State*, 357

S.C. 646, 665, 594 S.E.2d 462, 472–73 (2004). "The law to be charged must be determined from the evidence presented at trial." *State v. Knoten,* 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001). If any evidence supports a requested jury charge, the trial court should grant the request. *State v. Brown,* 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct.App.2004).

Under "the hand of one is the hand of all" theory, "one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." *State v. Langley,* 334 S.C. 643, 648, 515 S.E.2d 98, 101 (1999). Ward argues this theory should not have been charged to the jury because there was no evidence of a common plan or scheme between Ward and his co-defendant. However, evidence revealed that both defendants were with the group of men who confronted Dunmeyer at his truck after the fight spilled outside of the club. As Dunmeyer attempted to run away from the mob, a witness testified that Ward's co-defendant said, "some bitch is going to die tonight," and "we will handle that." The co-defendant and Ward then got into the truck that chased after the car in which Dunmeyer rode. Witnesses also testified that Ward shot his gun toward the other car, and the victim was killed by a stray bullet from this shoot out. After the shooting, the defendants slept at a friend's house, and Ward's co-defendant washed his hands with bleach in the morning.

The evidence at trial supported the theory that Ward and his co-defendant joined together to accomplish an illegal purpose, and therefore it was appropriate for the trial court to instruct the jury that if it found such a joint endeavor existed, each defendant was liable criminally for everything done by his confederate incidental to the execution of that endeavor. *See id.* Accordingly, we find no error in the trial court's charge to the jury that "the hand of one is the hand of all."

## IV. Directed Verdict

Ward next argues the trial court erred in failing to direct a verdict in his favor. We disagree.

"On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable

to the State." *State v. Padgett*, 354 S.C. 268, 270–271, 580 S.E.2d 159, 161 (Ct.App.2003). When ruling on a directed verdict motion, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster*, 349 S.C. 545, 564 S.E.2d 87 (2002). "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *Padgett*, 354 S.C. at 271, 580 S.E.2d at 161. "However, if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, [the appellate court] must find the case was properly submitted to the jury." *Id.*

The gist of Ward's argument that he is entitled to a directed verdict harkens back to his argument regarding the jury charge: Ward believes there is insufficient evidence to show he and his co-defendant were acting in concert. As explained above, evidence was presented to show that the two were involved in the fight with Dunmeyer; that as Dunmeyer fled, Ward's co-defendant threatened to kill someone that night; and that moments after that threat, Ward and the co-defendant got into a truck from which gunfire erupted towards the vehicle in which Dunmeyer rode. Furthermore, the driver of the truck as well as the co-defendant stated that Ward was shooting out of the passenger side window of the truck. Accordingly, there was some evidence that Ward shot the victim as he fired his weapon toward the other vehicle, and the trial court did not err in sending the case to the jury.

## V. Co–Defendant's Testimony

■ Finally, Ward argues the trial court erred by allowing the State to play a recording of the testimony given by Ward's co-defendant during Ward's first trial. At trial, however, Ward never argued that this former testimony was inadmissible, but instead specifically agreed that the testimony was admissible.[1] Because the issue was never raised or ruled upon by the trial court, it is not preserved for our review. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It

---

1. On appeal, Ward admits he acquiesced to the playing of the former testimony; however, he points out that he later argued "that the prosecution had tried the case differently than in the first trial." According to Ward, this argument related back to "a lack of the same motive for cross-examination in the first trial as in the second trial," so

is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

## CONCLUSION

Based on the foregoing, we find the trial court did not err in denying Ward's motions for a mistrial and directed verdict. We also find no error in the admission of the autopsy photographs or with the jury being instructed that the hand of one is the hand of all. Finally, we find Ward failed to preserve any argument with regard to his co-defendant's testimony. Accordingly, Ward's murder conviction is

**AFFIRMED.**

GOOLSBY and KITTREDGE, JJ., concur.

---

the issue was raised to and ruled upon by the trial court. We disagree. The record reveals that at the end of the trial, when Ward made his motion for a directed verdict, he argued that the State should be estopped from taking a position in this trial that was different from the position in the first trial. Specifically, he complained that in the first trial, Ward was tried solely as a perpetrator and not as an accomplice, so the defense presented evidence that Tremayne Washington (his co-defendant in the second trial) washed his hands in bleach after the shooting. In the second trial, the State presented the evidence of the hand-washing. However, Ward never argued the trial court erred in allowing his co-defendant's testimony to be played during his current trial, nor did he argue that the change in the State's strategy prevented him from thoroughly cross-examining his co-defendant during that first trial. Thus, his estoppel argument in no way encompassed the argument he makes on appeal.