285 S.C. 13 (1984)
328 S.E.2d 53
The STATE, Respondent,
v.
Louis J. TRUESDALE, Jr., Appellant.
22176
Supreme Court of South Carolina.
Heard September 11, 1984.
Decided October 31, 1984.
*14 David I. Bruck, Columbia, Ned Gregory, II, and Francis L. Bell, Jr., Lancaster, for appellant.
Atty. Gen. T. Travis Medlock, Asst. Attys. Gen., Harold M. Coombs, Jr., and Carolyn M. Adams, Columbia, and Sol. John R. Justice, Chester, for respondent.
Heard Sept. 11, 1984.
Decided Oct. 31, 1984.
CHANDLER, Justice:
This appeal is from a retrial in which Appellant Louis J. Truesdale was given the death sentence for the murder of Rebecca Ann Eudy. See State v. Truesdale, 278 S.C. 368, 296 S.E. (2d) 528 for decision of this Court in the first trial.
We affirm.
Appellant was convicted of (1) kidnapping, (2) criminal sexual conduct in the first degree and (3) murder. He received sentences of thirty years and death for criminal sexual conduct in the first degree and murder, respectively. The Trial Judge, pursuant to § 16-3-20 of the South Carolina Code and applicable decisions of this Court, imposed no sentence for the kidnapping conviction. State v. Copeland, 278 S.C. 572, 300 S.E. (2d) 63; State v. Perry, 278 S.C. 490, 495, 299 S.E. (2d) 324.
This case consolidates Truesdale's direct appeal and mandatory review of the death sentence.
At approximately 5:00 a.m., Sunday, April 6, 1980, Appellant directed law officers to the body of the 18 year old Miss Eudy in a field north of the city of Lancaster, South Carolina. Earlier that morning he had made voluntary oral statements concerning events of the previous Friday evening, leading to the death of the victim.
In these statements, confirmed in a later signed Miranda statement, Appellant admitted that he had kidnapped and raped Miss Eudy, but claimed he was forced and coerced to do so at gunpoint by a third person stranger whom he had met shortly prior to the rape and homicide. According to Appellant this stranger, who was never identified, fired four pistol shots into the victim, causing her death.

*15 ISSUES PRESENTED
Three issues are presented by Appellant's exceptions to this conviction and sentence: (1) disqualification by the Trial Judge of two jurors in violation of the principles of Witherspoon v. Illinois; (2) violation of Appellant's Miranda and Fourteenth Amendment rights by admitting into evidence a statement elicited in violation of his right to remain silent; (3) imposition of the death sentence under the influence of prejudice, passion or other arbitrary factors.

(1) DISQUALIFICATION OF JURORS
Appellant claims the Trial Judge, in disqualifying two jurors of the venire, failed to apply correctly the standards in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L Ed. (2d) 776 (1968). Specifically, he maintains that the voir dire examination of jurors Willie G. Powell and Johnny M. McCluney failed to demonstrate that they were irrevocably committed to vote against the death penalty.
Following inconsistent answers on his ability to impose the death penalty, Powell testified:
Q. Mr. Powell, just forget that question and go back to where I was before. Do you feel like there would be some circumstances where you could sign a death penalty verdict?
A. Yes; probably out of anger.
Q. Out of anger.
A. Probably, or 
Q. Okay, Mr Powell, I may be misreading what you said. Of course, if you want to make any explanation  are you talking about if the case directly affected you or your family or your loved ones, that in that kind of situation you could find the death penalty?
A. Right.
Q. Okay. Let's go back then. Let's assume for the moment everybody involved is a stranger to you or at least a non-loved one, a non-family member, a case in which you have no personal involvement. In any case like that, do you think you could sign a verdict giving the death penalty?
A. No, I don't believe I could.

*16 Q. So when you answered earlier that you could, you were thinking in terms of the case that hit home so to speak.
A. Right.
Q. The case in which you would have some personal involvement and personal anger over what had happened.
A. Right. (Tr. p. 617-618).
As to juror McCluney the record supports fully her disqualification to serve. When asked why she did not believe she could give the death penalty, she replied she would feel as guilty as the one pulling the switch. She further responded that she felt that God would be displeased with the death penalty, that its infliction was "something for God to do" (Tr. p. 545).
The entire colloquy in voir dire, and not isolated portions, determines the qualifications of jurors to serve. State v. Gilbert, 277 S.C. 53, 56, 283 S.E. (2d) 179 (1981). When the oral examinations of jurors Powell and McCluney are viewed in their entirety, the correctness of the Trial Judge's ruling is clearly shown. These jurors demonstrated by their answers an unwillingness to vote for the death penalty. The standards established in Witherspoon v. Illinois, supra. were applied, and there was no error in the disqualifications by the Trial Judge. State v. Copeland, 278 S.C. 572, 300 S.E. (2d) 63; State v. Linder, 276 S.C. 304, 313, 278 S.E. (2d) 335 (1981); State v. Tyner, 273 S.C. 646, 651, 258 S.E. (2d) 559 (1979).

(2) VIOLATION OF MIRANDA AND FOURTEENTH AMENDMENT RIGHTS
Appellant contends his Fourteenth Amendment due process and Fifth Amendment Miranda rights were violated. mandating a reversal of the verdict in both the guilt and the sentencing phases. We disagree.
Specifically, the contention is that Appellant's right under Miranda to remain silent was violated by the final question and answer in the direct examination testimony of Frank Harris, Chief of Police for the city of Lancaster, and a witness for the State.
*17 A full understanding of the issue requires a review of the background of the challenged testimony.
At about 9:00 p.m. on Friday evening, April 4, an alert citizen, Roy C. Curry, had observed a suspicious vehicle and driver at Roses' parking lot, located a short distance from BiLo's lot, where Miss Eudy was last seen alive at approximately 10:00 p.m. Mr. Curry immediately telephoned the vehicle license number to Lancaster city police headquarters, but Appellant's ownership of it was not established until Saturday morning.
In the late afternoon of Saturday, April 5, law enforcement officers contacted Appellant at his residence in Heath Springs. He voluntarily accompanied the officers to police headquarters where Miranda rights were orally administered. Later, at his own request, he rode with officers to Liberty Hill to assist in locating one Larry Doby who, according to Appellant, would corroborate Appellant's statements concerning his whereabouts on the previous day.
What occurred on the trip is described in the following testimony of Chief Harris:
Q. Will you please tell the jury what occurred on the trip to Liberty Hill?
A. At approximately six miles out of Lancaster ... I noticed that Mr. Truesdale had fallen asleep back from the side of Mr. Thomas' vehicle. About six miles he suddenly awoke and said, "I want to stay with you all until I get this thing straightened out, because I hadn't killed any girl."
Q. [by the Solicitor]: "Because I hadn't killed any girl."
A. Yes, sir.
Q. Up to that point, had you been present during all the questioning of Mr. Truesdale?
A. Yes, sir.
Q. Had anyone said anything to him about any girl being killed?
A. No, sir.
Q. Had anyone said anything to him about anybody being killed?
A. No, sir.

*18 Q. What comment if any or what was your response to his statement about, "I hadn't killed any girl"?
A. I asked him what girl was he talking about because noboby had said anything about anybody killing a girl.
Q. Did he respond to that statement?

A. No, he did not. Tr. 1374-1375 (Parenthesis and emphasis supplied).
Appellant's constitutional protection against self-incrimination under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. (2d) 694 (1966) was held in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. (2d) 91 (1976) to implicitly include the right to remain silent at any stage of an interrogation. Disclosure to the jury of the fact of that silence is a violation of Miranda, supra, and Doyle, supra.
When such a violation occurs, the question remains, however, whether it is cause for reversal or is harmless error beyond a reasonable doubt.
In Doyle, the Court recognized and reserved the issue of harmless error as one to be considered when raised. Doyle, 426 U.S. at 619-620, 96 S.Ct. at 2245, 49 L.Ed. (2d) at 98-99; United States v. Davis, 546 F. (2d) 583, 594 (5th Cir.1977).
Numerous Federal and State decisions subsequent to Miranda and Doyle hold that where a review of the entire record establishes that the error is harmless beyond a reasonable doubt, the conviction should not be reversed because of the violation. State v. Gates, 269 S.C. 557, 561, 238 S.E. (2d) 680 (1977); U.S. v. Sklaroff, 552 F. (2d) 1156 (5th Cir.1977); U.S. v. Smith, 635 F. (2d) 411 (5th Cir.1981); U.S. v. Whitaker, 592 F. (2d) 826 (5th Cir.1979), cert. denied, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed. (2d) 320; U.S. v. Davis, supra; U.S. v. Dixon, 593 F. (2d) 626 (5th Cir.1979), cert. denied, 444 U.S. 861, 100 S.Ct. 126, 62 L.Ed. (2d) 82; Sullivan v. Alabama, 666 F. (2d) 478 (11th Cir.1982).
In Chapman v. United States, 547 F. (2d) 1240 (5th Cir.1977), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed. (2d) 393, the Court harmonized decisions holding Doyle violations to be reversible error with those holding such violations to be harmless error beyond a reasonable doubt. In order for a violation to constitute harmless error, Chapman requires a trial record which establishes the following: that the reference *19 to silence be a single reference; that the single reference never be repeated or alluded to in either the trial or in jury argument; that the prosecutor does not directly tie the defendant's silence to his exculpatory story; that the exculpatory story be totally implausible, transparently frivolous; and that evidence of guilt be overwhelming.
An excellent analysis of Chapman and sequitur cases is found in Unites States v. Shaw, 701 F. (2d) 367 (5th Cir.1983), in which the Doyle violation is very similar to that before us. Shaw, supra, while approving the standards set out in Chapman, supra, for evaluating whether a Doyle violation is reversible error, holds that the determination must be made on a case-by-case analysis, citing Davis, supra.
Our Court has held that testimony concerning a defendant's refusal to give a statement to an officer, if error, would be harmless beyond a reasonable doubt where defendant's "uncorroborated version of his part in the robbery was obviously incredible and the jury understandably did not believe him." State v. Gates, supra 269 S.C. at 561, 238 S.E. (2d) 680.
When the principles and tests set out in the above decisions are applied to the record in this case, we find the Doyle violation harmless beyond a reasonable doubt.
The comment concerning Appellant's silence is miniscule in the record. Its negligible effect is shown by failure of his competent, experienced counsel to object at the time it was made, or at any other time. It was never once referred to or commented upon by the Solicitor during the trial, or in jury argument. Moreover, it was precipitated by Appellant's own spontaneous remark upon awakening and does not indicate an attempt on the part of the State to elicit an incriminating response. Certainly, the comment did not strike at the jugular of Appellant's defense, as it did in United States v. Harp, 536 F. (2d) 601, 603 (5th Cir.1976). Here, Appellant's defense was not a denial that he knew of the victim's death but, rather, that the third person stranger committed the homicide in the course of forcing him, at gunpoint, to kidnap and rape her.
Finally, it would be difficult to conceive of an exculpatory story more implausible or guilt more overwhelming than Appellant's. His statements contained numerous discrepancies and contradictions concerning the jacket and hood he wore; shotgun damage to his car; the murder weapon handgun; and his movements of Friday evening.
*20 Beyond these discrepancies is the incredulity of Appellant's basic defense: that a third person stranger had forced him at gunpoint to act as he did. The stranger was never identified, no effort was ever made to apprehend him, nor was his existence in any way corroborated. Appellant's claim that he could be forced, even at gunpoint, to pull the dying victim from her car, drag her feet-first a distance of twenty-five feet and then commit sex upon her was, understandably, rejected by the jury.
The implausibility of Appellant's exculpatory story was exacerbated by his own version of events after escaping from the stranger and returning home at approximately 1:00 a.m., Saturday, April 5. He went out to eat, then returned home for sleep. On Saturday he played basketball, purchased a new suit for Easter (the following day), bought a baseball glove and had keys made. He made no effort to notify police, a step which, assuming the truth of his story, may have saved the dying victim, let to apprehension of the stranger and established his innocence.
We find the Doyle violation to be harmless error beyond a reasonable doubt. As expressed in Shaw, supra:
The potential for real prejudice from the comment was virtually nil. We cannot say there is a reasonable possibility that this isolated and unsolicited reference to (defendant's) silence contributed in any way to his conviction. We hold that (the police officer's) comment was harmless beyond a reasonable doubt. U.S. v. Shaw, at p. 383. (Parenthesis supplied).

(3) IMPOSITION OF THE DEATH PENALTY
The death penalty was returned after a jury deliberation of fifteen minutes, which Appellant contends is sufficient showing that the verdict was imposed under the influence of passion, prejudice or other arbitrary factors. We disagree.
The decisions of our Court hold that brevity of jury deliberation is not a ground for reversal of a criminal conviction. State v. Chandler, 126 S.C. 149, 154, 119 S.E. 774; State v. Dewitt, 254 S.C. 527, 534, 176 S.E. (2d) 143; State v. Holland, 261 S.C. 488, 498-499, 201 S.E. (2d) 118.
*21 Cases involving brevity of deliberation time are collected in an annotation at 91 A.L.R. (2d) 1238. At page 1240 it is stated that "In no criminal prosecution has the haste or shortness of time been held to have had a prejudicial effect." [Emphasis supplied.]
From a careful review of the entire record it is manifestly clear that Appellant received a fair trial in both the guilt and sentencing phases.

PROPORTIONALITY REVIEW
Pursuant to § 16-3-25(C)(3), we have reviewed the other death penalty cases in this State on the question of proportionality. State v. Shaw and Roach, 273 S.C. 194, 255 S.E. (2d) 799 (1979).
We find the sentence is not excessive or disproportionate to that imposed in similar cases. The death penalty is fully justified by the brutal homicide, accompanied by rape, reflected in the evidence of this case. The crime was heinous.
Affirmed.
NESS, A.C.J., SHAW, Acting Associate Justice, and GREGORY and HARWELL, JJ., concur.