476 S.E.2d 695

**The STATE, Respondent,**

v.

**Donald Hall REID, Appellant.**

No. 24495.

Supreme Court of South Carolina.

Heard Dec. 5, 1995.

Decided Sept. 23, 1996.

Rehearing Denied Oct. 18, 1996.

76

M. Anne Pearce, Assistant Appellate Defender, South Carolina Office of Appellate Defense, Columbia, for appellant.

Charles Molony Condon, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Miller W. Shealy, Jr., Assistant Attorney General, and Solicitor Warren B. Giese, Columbia, for respondent.

WALLER, Justice:

Appellant, Donald Hall Reid (Reid) was convicted of murder, assault and battery with intent to kill (ABIK), possession of a stolen vehicle, driving under suspension, and failure to stop for a bluelight. He was sentenced to concurrent terms of

life, 20 years, 6 months, 5 years and 3 years, respectively. We reverse.

## FACTS

The charges in this case arise from a high speed chase along Interstate 20 (I-20) in Columbia. Reid, who was wanted by police on an outstanding warrant, was spotted driving a stolen Honda Prelude by an off duty police officer in West Columbia. The officer notified the highway patrol and followed Reid until additional units arrived on I-20 west bound toward Florence. Reid had two passengers in the vehicle with him, Loleta Boulware and Rochelle Ashmore.

Reid led police on a chase at speeds up to 119 mph. When he attempted to exit I-20 at Alpine Road, he lost control of the car and hit a bridge abutment. Reid and Boulware were thrown from the vehicle. Ashmore, who was in the front seat with her seatbelt on, was killed instantly. Boulware suffered numerous injuries.

Reid put up no defense at trial. Over counsel's objection, the State was permitted to question Officer Rowe whether, after being arrested and advised of his *Miranda* [1] rights at the accident scene, Reid had asked about the condition of his passengers. Officer Rowe responded that Reid "never asked anything about them at all. All he wanted to know that day at the scene was what he was being charged with." The trial court overruled Reid's objection, declining to "preclude the [State] from introducing any evidence which may gleam on [the issue of malice]," as it related to the murder and ABIK charges.

## ISSUE

Did the court err in allowing testimony that Reid did not inquire as to the status of his passengers after the accident? If so, was the error harmless?

## DISCUSSION

It is a violation of due process for a State to permit comment on a defendant's post-arrest silence since the giving

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of *Miranda* warnings might induce silence by implicitly assuring a defendant his silence will not be used against him. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *See also State v. Arther,* 290 S.C. 291, 350 S.E.2d 187 (1986); *State v. Smith,* 290 S.C. 393, 350 S.E.2d 923 (1986); *State v. Hale,* 284 S.C. 348, 326 S.E.2d 418 (Ct.App.1985), *cert. denied,* 286 S.C. 127, 332 S.E.2d 533 (1985). References to a defendant's lack of remorse are also improper as violative of a defendant's Fifth, Eighth, and Fourteenth Amendment rights. *State v. Diddlemeyer,* 296 S.C. 235, 371 S.E.2d 793 (1988), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991); *State v. Cockerham,* 294 S.C. 380, 365 S.E.2d 22 (1988); *State v. Johnson,* 293 S.C. 321, 360 S.E.2d 317 (1987), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992) (comments by the prosecution upon an accused's failure to express remorse invite jury to draw an adverse inference merely because the defendant did not appear penitent); *State v. Sloan,* 278 S.C. 435, 298 S.E.2d 92 (1982). Here, the State was permitted to inquire both as to Reid's post-arrest silence and his lack of remorse; this inquiry was therefore clearly improper.

 The State contends error in admission of this testimony is harmless error in light of the overwhelming evidence of malice in this case. *State v. Arther, supra.* We disagree.

Reid was tried for the offenses of murder and ABIK. The lesser-included offenses of reckless homicide, involuntary manslaughter, and assault and battery of a high and aggravated nature (ABHAN) were also submitted to the jury. During deliberations, the jury twice requested clarification as to the differentiation between murder and reckless homicide. The only pertinent distinction between the greater and lesser offenses is the element of malice.[2]

---

**2.** The trial court's charge as to the distinction between malice and recklessness was somewhat ambiguous. The jury was advised that reckless homicide involved the conscious disregard of the rights and safety of others and a **reckless disregard** for their safety. They were similarly charged that involuntary manslaughter involves criminal negligence which is the **reckless disregard** for the safety of others. Malice was defined for the jury as, *inter alia,* "a general **malignant recklessness** of the lives of others or a condition of the mind which shows a heart without social duty and fatally bent on mischief."

■ The evidence relied upon by the State to demonstrate malice was 1) the fact that Reid drove at speeds up to 119 mph, 2) he failed to stop when requested to do so by his passengers, and 3) he told police he did not stop as "he didn't want to go back to jail." Although the jury **may** have found this evidence sufficient to demonstrate malice,[3] the jury could undoubtedly have found this evidence to support a finding of recklessness as well. Accordingly, we cannot say the jury could reach no other conclusion but to have found Reid acted with malice.

Moreover, the error in admission of this testimony is exacerbated by the fact that the trial court specifically admitted it to prove the crucial issue in the case, i.e. whether or not Reid acted with malice. Clearly, if the trial court erroneously admitted testimony concerning Reid's lack of remorse to demonstrate malice, the jury may have used it for the same purpose and, in essence, used it to "tip the scales against him." Accordingly, we cannot say the error was harmless beyond a reasonable doubt.

■ Finally, the State contends the trial court's charge to the jury functioned as a curative instruction sufficient to cure any error. We disagree.

■ An instruction to disregard incompetent evidence is usually deemed to have cured the error unless on the facts of the particular case it is probable that, notwithstanding the instruction, the accused was prejudiced. *State v. Hale, supra.* The jury should be specifically instructed to disregard the evidence, and not to consider it for any purpose during deliberations. A mere general remark excluding the evidence does not cure the error. *State v. Smith, supra.*

---

3. We have recognized reckless driving may constitute evidence of malice. *State v. Webb,* 301 S.C. 66, 389 S.E.2d 664 (1990). Contrary to the dissent's assertion, this Court, in *State v. Mouzon,* 231 S.C. 655, 662, 99 S.E.2d 672, 675–676 (1957), did not make a finding of malice. On the contrary, we merely held that "the evidence was sufficient to sustain a verdict for murder." (Emphasis supplied). *Mouzon,* involved solely the sufficiency of the evidence to support the jury's verdict. It did not hold, as the dissent infers, that the defendant's reckless driving constituted malice *per se.*

Here, during the course of his general charge to the jury, the trial judge instructed of Reid's right not to testify and that it should not be used against him. The court then stated:

Now a person arrested for a crime has a constitutional right to remain silent and not say anything that could be used to incriminate himself. The fact that he does not say anything about any particular issue or fact in this case cannot be used against the defendant in any way or for any purpose.

Under the facts of this case, we find the charge given insufficient to cure the error. The charge was not given until the end of trial and did not specifically advise the jury it could not consider Reid's lack of remorse against him. Moreover, in context, the charge clearly relates to Reid's failure to testify rather than his post-arrest silence. These factors, when coupled with the fact that the jury twice requested clarification between the verdicts of murder and reckless homicide, lead to the conclusion that the instruction here did not cure the error. Accordingly, as the jury may have used the comment concerning Reid's lack of remorse to infer he acted with malice, we reverse the convictions for murder and ABIK and remand for a new trial.[4]

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

FINNEY, C.J., and MOORE, J., concur.

TOAL and BURNETT, JJ., dissenting in separate opinion.

TOAL, Justice, dissenting:

I respectfully dissent.

The comment on Reid's silence was improper, but I find that it was cured by the judge's general instructions to the jury. An instruction to disregard incompetent evidence usually is deemed to have cured the error unless on the facts of the particular case it is probable that, notwithstanding such instruction, the accused was prejudiced. *State v. Craig*, 267 S.C. 262, 227 S.E.2d 306 (1976). In this case, the court

---

4. The convictions for possession of a stolen vehicle, driving under suspension, and failure to stop for a bluelight are unchallenged and are, accordingly, affirmed.

charged: "Now, a person arrested for a crime has a constitutional right to remain silent and not say anything that could be used to incriminate himself. The fact that he does not say anything about any particular issue or fact in this case cannot be used against the defendant in any way or for any purpose." It is not probable that notwithstanding the instruction, the accused was prejudiced. Hence, any error should be deemed cured with this instruction.

Even if it is assumed that the instruction to the jury did not cure the error, the error does not require reversal, because the entire record establishes that any error was harmless beyond a reasonable doubt. *See State v. Truesdale*, 285 S.C. 13, 328 S.E.2d 53 (1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1878, 85 L.Ed.2d 170 (1985). Since the United States Supreme Court's landmark decision in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in which it adopted the general rule that a constitutional error does not automatically require reversal of a conviction, it has applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Court held that a prosecutor's improper comment on a defendant's silence was subject to harmless error analysis. Accordingly, we may determine whether the error about which Reid complains was harmless.

A review of Reid's high speed chase reveals overwhelming evidence of malice. Video cameras mounted in two of the highway patrol vehicles that followed Reid captured the chase, which ended in the crash killing one of Reid's passengers. On the video, Reid's Honda Prelude is shown to be speeding at an unbelievable rate. Reid is travelling at such high speeds that, in comparison, the other vehicles cruising at the normal highway speed of 55–60 M.P.H. appear to be barely moving. He was recorded as driving as fast as 119 M.P.H., some *64 M.P.H. greater* than the speed limit of 55 M.P.H. on Interstate 20! In addition to endangering others with his uncontrolled speed, Reid also put others in significant danger by his weaving in and out of traffic in order to evade the police and

dodge other vehicles. At one point, he even runs off the road in order to avoid running into other vehicles.

Furthermore, such reckless driving was not just confined to a few seconds, but continued for a number of minutes (and hence, miles) through heavy traffic on Interstate 20. The chase terminates when Reid attempts to exit the highway, changes his mind, attempts to reenter the highway, and runs his Honda into a bridge abutment, crushing the vehicle, causing himself and one passenger to be hurled from the car, and instantly killing the second passenger.

Reid's high speed chase provides clear evidence of "a general malignant recklessness of the lives and safety of others." *State v. Mouzon,* 231 S.C. 655, 662, 99 S.E.2d 672, 675–76 (1957). In *Mouzon,* the Court found malice where the intoxicated defendant was driving 70 to 80 M.P.H. in a 35 M.P.H. zone when he hit a pedestrian. The actions of the defendant here were even more egregious.[1] A finding of malice is evidenced not only by Reid's driving at speeds nearing 120 M.P.H., but also by his response (or lack thereof) to his passengers. The record reveals the terrifying, and ultimately tragic, scene of the two women in Reid's vehicle begging him to stop, screaming for assistance, pounding on the window for help, and crying out for fear of their lives. To such hysteria, Reid reacted with cocky indifference:

A: Rochelle was crying . . . and I laid down in the backseat and I said, oh, God, Rochelle, we are going to die. And she just was just crying and calling for her mama and after that, I didn't—I mean I just heard her just whimpering. . . . And I got up and that's when I saw the highway patrolman . . . and I started beating on the window telling him to help us and—

Q: To help y'all. Who did you need help from?

A: Because he wasn't stopping.

Q: Did you ask him to stop?

A: Yes, I did. I asked him a lot of times.

---

1. The majority misapprehends the citation to *Mouzon.* The implication is not that "the defendant's reckless driving constituted malice *per se.*" Rather, the evidence as a whole, which included Reid's reckless driving, provides ample support for a finding of malice.

Q: What did he say?

A: He ignored me. He ignored me.

Q: What was his demeanor? How did he appear to you when you were asking him to stop when the highway patrol was chasing you?

A: Real cocky. Like he just didn't—

Q: Real cocky?

A: Yes, he didn't—he wasn't—he was tuning us out. Our cries. He was tuning us out.

Q: And what were you doing? Were you calm when you were asking him to stop?

A: No, I was hysterical because I was holding onto the seat and saying, please, please, stop. Turning sideways to try and face him, telling him to stop so I could see am I getting to him, would he stop. But he never did.

Q: What, if anything, did he tell you why he wasn't going to stop?

A: He said that there's no way he's going to jail. He said he's not going to jail.

Q: Okay. Now, during this entire process, did Rochelle ever ask him to stop?

A: Yes, she did. She said stop the car, boy. You better stop this car. Stop the car now. He wouldn't.

Q: Now, as you came up I-20, were you conscious when this wreck occurred?

A: No, I wasn't?

Q: Why not?

A: Because when I saw—after I seen the highway patrolman, I was beating on the window and asking them to help us. I then turned around to see where we were going and I saw him—he was still driving real fast and I saw him getting ready to hit this car in the back and it just scared me until I just screamed so loud, and, I guess I just scared myself and I passed out. Because I don't remember anything after that.

Reid's reaction to his passengers' beseeching him to stop reveals a complete disregard of the lives and safety of others.

The reason for his actions, as indicated by the testimony above and as corroborated by another officer, was that he did not want to go jail. It is difficult to conceive of a more malignant recklessness than that displayed in the present case. Thus, in the context of the entire record and its overwhelming evidence of malice, the officer's statements constituted harmless error beyond a reasonable doubt. I would affirm Reid's conviction.

BURNETT, J., concurs.