593 S.E.2d 509

The STATE, Respondent,

v.

**LARRY DEAN McCLUNEY, Appellant.**

No. 3742.

Court of Appeals of South Carolina.

Heard Jan. 14, 2004.
Decided Feb. 2, 2004.
Rehearing Denied March 18, 2004.

Jack B. Swerling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney

General David Spencer, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

ANDERSON, J.:

Larry Dean McCluney was convicted of trafficking in "more than 400 grams of cocaine." The trial judge sentenced McCluney to twenty-five years imprisonment and a $200,000 fine. McCluney appeals. We reverse.

## FACTS/PROCEDURAL BACKGROUND

In February of 1999, Glenn Hadden, a drug dealer, had a conversation with Scott Simmons "about transferring a large quantity of cocaine" to Simmons. Shannon Randolph, Hadden's friend to whom he sold drugs, introduced Hadden to Simmons. Hadden advised Simmons that he could sell him two or three kilograms of cocaine. The two men reached an agreement whereby Hadden would sell "two kilos of cocaine" to Simmons for $40,000.

Hadden contacted Lieutenant David Oglesby, with the Cherokee County Sheriff's Department, and informed him of the drug deal with Simmons. Hadden agreed to work as a confidential informant in this drug transaction. The police then tape recorded Hadden's next phone call to Simmons. During the phone conversation, Simmons stated that someone from Shelby, North Carolina would be arriving in a black Lexus with the money for the transaction. At trial, Simmons testified the person he was referring to was McCluney.

Hadden arranged to meet with Simmons at a secluded location. Hadden was accompanied by an undercover police officer carrying two blocks of imitation cocaine. Immediately prior to the transaction, Simmons met McCluney and another individual at Brown's Store, a local gas station. McCluney, a native of Shelby, North Carolina, was driving a black Lexus. Police arrested McCluney at Brown's Store after Simmons and Hadden completed the drug transaction.

At trial, defense counsel cross-examined Hadden about the circumstances of the drug transaction. Specifically, counsel asked Hadden whether Shannon Randolph "said that Simmons was looking for two kilos of cocaine." Hadden responded:

"Something to that effect." At that point, the following exchange occurred:

[The State]: Objection as to what that person may have said.

[Defense Counsel]: This goes to the state of mind of this witness, Your Honor, because he's the one that ultimately took the ball at that point and ran with it.

[The State]: I'm not sure how state of mind is relative, based on that conversation.

The Court: Sustained.

At the close of the State's case, defense counsel moved for a directed verdict arguing that, as the substance in this case was imitation cocaine, the State failed to prove the criminal offense of trafficking cocaine. Defense counsel contended that our Supreme Court, in *Murdock v. State*, 311 S.C. 16, 426 S.E.2d 740 (1992), held "it is not illegal . . . to possess imitation drugs with intent to distribute." The trial judge denied the motion for a directed verdict, finding that (1) *Murdock* was based on a narrow set of facts and (2) the trafficking statute was very broadly written.

## ISSUES

I. Did the trial judge err in denying McCluney's motion for a directed verdict?

II. Did the trial judge err in refusing to allow defense counsel to cross-examine Simmons regarding the mandatory nature of the sentence provided for the crime charged?

III. Did the trial judge err in finding Hadden's testimony was inadmissible hearsay?

## LAW/ANALYSIS

### Directed Verdict

McCluney contends the trial judge erred in denying his motion for a directed verdict because, as the substance involved was imitation cocaine, the State was unable to present evidence of trafficking in cocaine. We agree.

On appeal from the denial of a directed verdict in a criminal case, an appellate court must view the evidence in the light

most favorable to the State. *State v. Walker,* 349 S.C. 49, 562 S.E.2d 313 (2002); *State v. Al–Amin,* 353 S.C. 405, 578 S.E.2d 32 (Ct.App.2003); *State v. Morgan,* 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002). When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Wilds,* 355 S.C. 269, 584 S.E.2d 138 (Ct.App.2003); *State v. McLauren,* 349 S.C. 488, 563 S.E.2d 346 (Ct.App.2002). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Harris,* 351 S.C. 643, 572 S.E.2d 267 (2002); *State v. Condrey,* 349 S.C. 184, 562 S.E.2d 320 (Ct.App.2002). On the other hand, a defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McKnight,* 352 S.C. 635, 576 S.E.2d 168 (2003); *State v. McHoney,* 344 S.C. 85, 544 S.E.2d 30 (2001); *State v. Padgett,* 354 S.C. 268, 580 S.E.2d 159 (Ct.App.2003).

An "imitation controlled substance" is defined as a "noncontrolled substance which is represented to be a controlled substance and is packaged in a manner normally used for the distribution or delivery of an illegal controlled substance." S.C.Code Ann. § 44–53–110 (2002). In contrast, a "counterfeit substance" is defined as:

a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person who, in fact, manufactured, distributed, or dispensed such substance and which, thereby, falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

*Id.*

Lieutenant Oglesby testified the substance used in the drug transaction was imitation cocaine. Specifically, Oglesby stated the substance was "fake cocaine." That is, the substance was primarily "ground up" salt and flour mixed with other substances such as caffeine, lidocaine, and benzocaine. However,

McCluney was indicted under the trafficking statute, S.C.Code Ann. § 44–53–370 (2002 & Supp.2003), which refers to only the trafficking of controlled or counterfeit substances. Imitation controlled substances, such as the imitation cocaine used in the present case, are not mentioned in § 44–53–370. In fact, the only indictable offense applicable to imitation cocaine would be under S.C.Code Ann. § 44–53–390(a)(6) (2002), the statute prohibiting the delivery or distribution of imitation controlled substances. Section 44–53–390(a)(6)(A) provides: "It is unlawful for a person knowingly or intentionally to . . . distribute or deliver . . . an imitation controlled substance with the expressed or implied representation that the substance is a narcotic . . . controlled substance. . . ." Section 44–53–390(a)(6) differs from the general trafficking statute in that the offense of distribution or delivery of imitation controlled substances is not keyed to weight, whereas the trafficking statute is dependent upon it. Unlike the mandatory sentence of twenty-five years imprisonment for trafficking in controlled or counterfeit substances, the maximum sentence for delivery or distribution of imitation controlled substances is five years imprisonment and a $10,000 fine. S.C.Code Ann. § 44–53–390(b) (2002).

The Supreme Court explained the difference between imitation and counterfeit substances in *Murdock v. State*, 311 S.C. 16, 426 S.E.2d 740 (1992). In *Murdock*, the defendant was found in possession of "what was believed to be cocaine and . . . LSD." SLED tested the substances and determined they were not controlled substances. The defendant subsequently pled guilty to two counts of possession of a counterfeit substance with intent to distribute. *Id.* at 17–18, 426 S.E.2d at 741. The Court declared:

> This case revolves around the confusion between "counterfeit" and "imitation" substances. [Defendant] was indicted for two counts of possession with intent to distribute a *counterfeit* substance.
>
> "Counterfeit substance" means a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispenses such substance and which there-

by falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

S.C.Code Ann. § 44–53–110 (1985).

The drugs found in [defendant's] possession were not counterfeit drugs. They were imitation drugs.

"Imitation controlled substance" means a noncontrolled substance which is represented to be a controlled substance and is packaged in a manner normally used for the distribution or delivery of an illegal controlled substance.

S.C.Code Ann. § 44–53–110 (1985). We take this opportunity to clarify the practical difference between counterfeit and imitation substances. While there may be exceptions, such as when these substances are legally used for legitimate medical purposes, ordinarily there is no offense involving *counterfeit* LSD or cocaine, as these drugs are typically produced illegally and, therefore, usually do not have a trademark or label of a manufacturer.

*Id.* at 18, 426 S.E.2d at 742 (emphasis in original). After noting the differences in the statutory definitions of these substances, the Court found the defendant had not committed a crime because "it is not a criminal offense to possess *imitation* drugs with the intent to distribute. It is illegal only to actually distribute or deliver imitation drugs." *Id.* at 18–19, 426 S.E.2d at 742 (emphasis in original).

Given the differences between sections 44–53–370 and 44–53–390, we find the trial judge erred in denying McCluney's motion for a directed verdict. Imitation cocaine, the substance at issue in this case, is not a counterfeit substance and does not fall under the purview of the trafficking statute. This error was compounded by the trial judge's jury charge on trafficking. The judge did not charge the jury that the substance at issue in this case was imitation cocaine. Rather, he referred to the substance as counterfeit five times in the jury charge.

## CONCLUSION

We reverse the trial judge's denial of McCluney's motion for a directed verdict because, as McCluney was in possession of imitation cocaine, he was improperly indicted under the traf-

ficking statute. We do *NOT* reach any other issues. Based on the foregoing, McCluney's conviction and sentence is

**REVERSED.**

GOOLSBY, J., and CURETON, A.J., concur.