598 S.E.2d 279

**The STATE, Respondent,**

**v.**

**Christopher Clarke HORTON, Appellant.**

**No. 3787.**

Court of Appeals of South Carolina.

Decided March 3, 2004.

Submitted April 6, 2004.

Rehearing Denied June 28, 2004.

William G. Rhoden, of Gaffney, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

ANDERSON, J.:

Christopher Clarke Horton was indicted for felony driving under the influence causing death (felony DUI) and reckless homicide. The jury returned a verdict of guilty of reckless homicide and not guilty of felony DUI. The trial judge sentenced Horton to ten years imprisonment. We affirm.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

### FACTUAL/PROCEDURAL BACKGROUND

On September 26, 2001, Gregory Thomas, fourteen years old, was struck and killed while walking with his family. Horton was driving the vehicle that struck Thomas.

At trial, the State presented the testimony of Suzie Thomas (Gregory's mother) and Geoffrey Thomas (Gregory's nineteen-year-old brother). Suzie stated that she, Gregory, and Geoffrey were walking down the left-hand side of a road near their home shortly after 6:30 p.m. Suzie professed that, as they saw a green car approaching, the three crossed the road. According to Suzie, even though all three of them looked both ways before crossing, Gregory was struck by a white car that was coming down the road "very fast." Suzie stated that, when she "looked to go across the road," she did not see the white car. Suzie and Geoffrey "made it to the side of the ... road." Suzie said Gregory was "almost on the side of the road on the grass, but he had not made it to the side of the road." Suzie declared:

> And when I saw the car coming, I screamed "Gregory, get out of the road. Go to the side." And as I said that, Gregory's right leg went up like he was going to step on the grass. And when he did that, the car hit him and he flew up.

After striking Gregory, the white car proceeded down the street for approximately 275 feet. When Horton stopped and exited the vehicle, Suzie asked: " 'Why did you hit my son?' " Horton responded: " '[B]ecause he wouldn't get out of my way.' "

On cross-examination, Suzie admitted she did not "tell any of the police officers about" the green car. When queried as to whether she told the officers about Horton's statement that her "son wouldn't get out of the way," Suzie answered: "I don't remember. I don't think so...." Suzie acknowledged she did not see Horton's car until it hit Gregory. The following colloquy occurred on cross-examination:

> Q. Well, I believe you said that you never saw the white car.
>
> A. No, I never saw the white car until we stepped over, but he was—that's how fast he came up on us.

Q.   So you only saw the white car just a split second before it hit your son?

A.   Right when it hit my son.

Q.   So that's the only time that you saw the white car?

A.   Yes. I heard him. I heard it and that's when I, you know, screamed for Gregory, and then he—before Gregory could step over onto the grass, he hit him.

Geoffrey corroborated Suzie's testimony regarding the facts leading up to the accident. Geoffrey testified he did not see the white car when they began to cross the road and did not "hear any brakes" or see any skid marks after the accident. Geoffrey did not testify that Horton made a statement after exiting the white car.

Officer David H. Burgess, with the South Carolina Highway Patrol, was the responding officer. Officer Burgess testified that, upon reaching the accident scene, he noticed there were no skid marks on the road. While sitting beside Horton in his patrol vehicle, Officer Burgess detected "an odor of alcohol." Although the officer did not perform any field sobriety tests and noted that Horton did not slur his speech or stagger, he opined that Horton was under the influence. Officer Burgess stated that Horton's attitude after the accident was unusual, commenting that Horton was "unemotional." The officer admitted he did not know "anything about [a] green car" until the day of trial.

Horton was given a Datamaster test at the Spartanburg County Detention Center. Horton registered a 0.03. Highway Patrol Officer Russell Joye, who administered the test, testified Horton was cooperative, and that he did not smell an odor of alcohol on Horton's person. After the Datamaster test, Officer Joye drove Horton to the hospital for a urine test. Horton signed an implied consent form before a urine sample was collected. On direct examination, Sue Mobley, a nurse at the hospital who participated in the urine test, was asked if she smelled any alcohol on Horton. Mobley answered: "A slight smell."

Robert Michael Sears, a forensic toxicologist with SLED, later analyzed the urine sample. The results of the urine test indicated the presence of a tetrahydrocannabinol metabolite, hydrocodone, dihydrocodeine, and benzoylecgonine. Tetrahy-

drocannabinol, more commonly known as THC, is the "pharmacologically active component of marijuana." Hydrocodone and dihydrocodeine are opiates. Benzoylecgonine is a "major metabolite" of cocaine. A blood test was not performed. Sears declared that "what [he] found in the urine test, plus the alcohol that was in [Horton's] system," would "affect a person's ability to drive." According to Sears, urine tests show "a history of use," but "not necessarily [the] presence of drugs in the blood." On cross-examination, defense counsel posited the following question to Sears: "So without the blood test, we don't know whether or not Mr. Horton was under the effects of those drugs at the time of this accident, do we?" Sears answered: "That's correct." The following exchange occurred between defense counsel and Dr. David H. Eagerton, chief toxicologist at SLED:

Q. All right. So by looking at this evidence here, this urine test, it doesn't tell you anything about what was in Mr. Horton's blood at the time of this accident, does it?
A. At exactly the time of the accident, no, it doesn't. It only tells you what was in his blood within that three-day window.

Horton presented the testimony of Alison Cocoros, the chief investigator for the Spartanburg County Coroner's Office. Cocoros observed Horton at the accident scene. When asked by defense counsel if she "smell[ed] any odor of alcohol on Mr. Horton that evening when [she] talked to him," Cocoros answered in the affirmative. However, when queried regarding whether Horton appeared to be impaired, she responded: "No, sir."

Cocoros spoke with Suzie and Geoffrey at the hospital on the night of the accident. She declared that neither Suzie nor Geoffrey mentioned a green car "coming in the opposite direction" or any statement made by Horton after the accident. Cocoros stated that Suzie and Geoffrey told her the following when explaining the events leading up to the accident:

When I asked them what had happened, ... [t]hey stated that they walked around the curve on Casey Creek Road, that the son Geoff and Ms. Thomas crossed to the right-hand shoulder. Gregory was in the middle of the left-hand

lane. They said that they heard a car behind them. They started telling Gregory to get out of the road. Instead of crossing to the left this way, he crossed to the right towards them on this side of the road and a car came around the curve and hit him.

Kristin Rodgers was Horton's passenger on the night of the accident. She testified in his defense. Rodgers stated Horton had two beers at dinner and did not have any problems operating his car. Rodgers discussed the accident:

We are going down the road. We starting to go around a curve and there is three people walking in the middle of the road, and [Horton] slowed down. A lady and a boy went to the right side of the road and another boy went to the left side of the road to let us through. So we starting to go through them and as we are starting to go through them, the boy from the left side of the road runs back on the right side of the road and that's when we hit him.... [I]t all happened in a matter of seconds.

Horton's testimony corroborated that of his passenger. He affirmed that he had two beers with dinner, but had drunk no other alcohol that day. Horton denied taking any drugs on the day of the accident. However, he admitted to smoking marijuana and snorting cocaine three days before, and taking a Lortab two days before the accident. Both Horton and Rodgers testified they did not know of anything that Horton could have done to avoid the accident.

At trial, Horton moved to suppress the results of the urine test, arguing improper procedure, an incomplete chain of custody, and the urine test results were more prejudicial than probative under Rule 403, SCRE. The trial judge denied the motion. At the close of the State's case, Horton moved for a directed verdict on the charges of felony DUI and reckless homicide. This motion was denied. After he presented his case, Horton renewed his motion for a directed verdict, which was denied. The jury returned a guilty verdict as to reckless homicide and a not guilty verdict as to felony DUI.

### *ISSUES*

I. Did the trial judge err in failing to grant Horton's motion for a directed verdict as to the reckless homicide charge?

II. Did the trial judge err in admitting the results of the urine test?

III. Did the trial judge err in allowing the State to present evidence that Horton lacked remorse?

## *LAW/ANALYSIS*

### I. Directed Verdict—Reckless Homicide

■ Horton argues the trial judge erred in denying Horton's motion for a directed verdict as to the reckless homicide charge. We disagree.

■ On appeal from the denial of a directed verdict in a criminal case, an appellate court must view the evidence in the light most favorable to the State. *State v. Curtis,* 356 S.C. 622, 591 S.E.2d 600 (2004); *State v. Al–Amin,* 353 S.C. 405, 578 S.E.2d 32 (Ct.App.2003); *State v. Morgan,* 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002). When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Wilds,* 355 S.C. 269, 584 S.E.2d 138 (Ct.App.2003); *State v. McLauren,* 349 S.C. 488, 563 S.E.2d 346 (Ct.App.2002). If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Rosemond,* 356 S.C. 426, 589 S.E.2d 757 (2003); *State v. Lindsey,* 355 S.C. 15, 583 S.E.2d 740 (2003); *see also State v. Ballington,* 346 S.C. 262, 551 S.E.2d 280 (Ct.App.2001) (stating judge should deny motion for directed verdict if there is any direct or substantial circumstantial evidence which reasonably tends to prove accused's guilt, or from which his guilt may be fairly and logically deduced). On the other hand, a defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McKnight,* 352 S.C. 635, 576 S.E.2d 168 (2003); *State v. McCluney,* 357 S.C. 560, 593 S.E.2d 509 (Ct.App.2004); *State v. Padgett,* 354 S.C. 268, 580 S.E.2d 159 (Ct.App.2003).

"When the death of a person ensues within three years as a proximate result of injury received by the driving of a vehicle in reckless disregard of the safety of others, the person

operating the vehicle is guilty of reckless homicide...."
S.C.Code Ann. § 56–5–2910(A) (Supp.2003). Reckless homicide requires proof that the defendant (1) operated an automobile; (2) in reckless disregard for the safety of others; (3) the defendant's conduct proximately caused injury to the victim; and (4) within three years, the victim died as a result of these injuries. *See State v. Watson,* 349 S.C. 372, 563 S.E.2d 336 (2002).

To convict an individual of reckless homicide, the State must prove the individual was driving a vehicle "in reckless disregard of the safety of others." *State v. Rowell,* 326 S.C. 313, 487 S.E.2d 185 (1997). Reckless disregard for the safety of others signifies an indifference to the consequences of one's acts. *Id.; see also McKnight,* 352 S.C. at 645, 576 S.E.2d at 173 ("[I]n reckless homicide cases, we have held that reckless disregard for the safety of others signifies an indifference to the consequences of one's acts."). It denotes a conscious failure to exercise due care or ordinary care or a conscious indifference to the rights and safety of others or a reckless disregard thereof. *Rowell,* 326 S.C. at 315, 487 S.E.2d at 186.

We find the State presented sufficient evidence to submit the reckless homicide charge to the jury. Both Suzie and Geoffrey Thomas testified that Gregory looked both ways before crossing the street. The Thomases declared they did not see the white car that Horton was driving until it struck and killed Gregory. Officer Burgess's testimony that there were no skid marks on the road where the car struck Gregory supported the statement by the Thomases that Horton's car came upon them very quickly. Officer Burgess said that he detected "an odor of alcohol" on Horton's person and, although Horton was not slurring his speech or staggering, he believed Horton was under the influence. The officer indicated that his suspicions were strengthened by the fact that Horton was "unemotional" after the accident and that "[h]is attitude and behavior just didn't add up to [the] reality of what had just happened." The forensic toxicologist with SLED noted that, at the time of the accident, Horton had alcohol, THC, opiate derivatives, and cocaine metabolite in his system. A jury could conclude from these facts that, on the day in question, Horton operated his vehicle "in reckless disregard of the safety of others."

The State presented evidence reasonably tending to prove Horton's guilt of the offense of reckless homicide. Accordingly, the trial judge did not err in denying Horton's motion for a directed verdict on the charge of reckless homicide.

## II. Urine Test

Horton contends the trial judge erred in admitting the results of his urine test. We disagree.

An *in camera* hearing was held to determine the admissibility of the urine test. Officer Joye testified that, after administering the Datamaster, he asked Horton to submit to a urine test. The officer drove Horton to the emergency room (ER) at Spartanburg Regional Medical Center. He filled out the implied consent form at the hospital. Horton signed the implied consent form. Because a male nurse was not available to go in the bathroom with Horton while he was giving the sample, Officer Joye went into the "one unit bathroom" with Horton and observed him give the urine sample. The bathroom had a toilet but no stall. Horton handed the urine sample to Officer Joye. The officer then passed the sample to an ER staff nurse, Sue Mobley, who had observed from outside the partially open door. Mobley "labeled the kit, as far as putting the tape over the urine sample" and "put[ting] the identification information ... on it." After Mobley signed, sealed, and labeled the urine sample, she returned the sample to Officer Joye. Officer Joye gave the urine sample to Officer Burgess for transport.

Officer Burgess witnessed Mobley sign the "specimen seal." Officer Burgess signed the outside of the box indicating that he had received the urine sample. The officer "kept the sample in his possession until [he] turned it in to the evidence locker at the patrol office." Officer Burgess stated he did not sign the sample in to the evidence locker until September 27. He could not recall at what time he placed the sample in the evidence locker. Further, he did not remember whether he stored the sample in his personal refrigerator prior to placing it in the evidence locker. When he placed the sample in the evidence locker, "[t]he bottle [was] sealed and [was] in plastic. And on the outside ... of the box there [are] tabs ... that are sealed and initialed."

Sergeant William Eugene Williford removed the urine sample from the evidence locker and transported it to SLED headquarters in Columbia. When Sergeant Williford arrived at SLED, the evidence technician removed the sample from the box and placed it in a plastic bag. Sergeant Williford sealed the bag, initialed it, and placed it in the SLED drop box. When asked on cross-examination what type of container the sample was contained in when he removed it from the evidence locker, Sergeant Williford responded: "A styrofoam-type container." He stated the urine sample was in a plastic container which was inside a sealed box which was inside a second sealed box. Robert Michael Sears, the SLED forensic toxicologist, confirmed that he removed Horton's sample from a sealed plastic bag prior to conducting his analysis of the urine sample. The trial judge denied Horton's motion to suppress the results of the urine test.

The admission or exclusion of evidence is left to the sound discretion of the trial judge. *State v. Adams*, 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *State v. Hamilton*, 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001); *State v. Mansfield*, 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000). An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. Foster*, 354 S.C. 614, 582 S.E.2d 426 (2003); *State v. McDonald*, 343 S.C. 319, 540 S.E.2d 464 (2000).

### A. Collection of Urine Sample

Horton maintains the results of the urine test should have been suppressed because the urine sample was improperly collected.

"Blood and urine samples must be obtained by physicians licensed by the State Board of Medical Examiners, registered nurses licensed by the State Board of Nursing, and other medical personnel trained to obtain the samples in a licensed medical facility." S.C.Code Ann. § 56–5–2950(a) (Supp.2003).

Horton claims section 56-5-2950 was violated because Officer Joye was the individual who collected the urine sample.

We find this argument is without merit. Because there were no male nurses available that evening to personally witness the production of the sample and immediately collect it, Mobley followed hospital policy and did not accompany Horton into the bathroom. However, while Mobley did not stand next to Horton while he gave his sample, she observed the situation from the partially open bathroom door. The only role played by Officer Joye was to place a lid on the sample and hand it to Mobley, who then signed the appropriate labels on the container and sealed it.

We find the trial judge did not err in finding that, as Mobley was in the "immediate proximity" of the test, the procedure followed was appropriate under the circumstances.

## B. Chain of Custody

Horton avers the State failed to prove a complete and proper chain of custody in regard to the urine sample.

The State must prove a chain of custody for a urine sample from the time it is obtained until it is tested. *See State v. Carter*, 344 S.C. 419, 544 S.E.2d 835 (2001) (case involving a blood sample); *Ex parte Dep't of Health & Envtl. Control*, 350 S.C. 243, 565 S.E.2d 293 (2002). A complete chain of evidence must be established as far as practicable, tracing possession from the time the specimen is given to the final custodian by whom it is analyzed. *Carter*, 344 S.C. at 424, 544 S.E.2d at 837; *State v. Cribb*, 310 S.C. 518, 426 S.E.2d 306 (1992); *Benton v. Pellum*, 232 S.C. 26, 100 S.E.2d 534 (1957). Where the substance analyzed has passed through several hands, the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis. *Benton*, 232 S.C. at 33–34, 100 S.E.2d at 537.

Proof of chain of custody need not negate all possibility of tampering but must establish a complete chain of evidence as far as practicable. *Carter*, 344 S.C. at 424, 544 S.E.2d at 837; *State v. Williams*, 297 S.C. 290, 376 S.E.2d 773 (1989); *Benton*, 232 S.C. at 33, 100 S.E.2d at 537. In applying this rule, our Supreme Court has found evidence inadmissible only where there is a missing link in the chain of possession because the identity of those who handled the specimen was not established at least as far as practicable. *Carter*, 344 S.C.

at 424, 544 S.E.2d at 837. On the other hand, where the identity of persons handling the specimen is established, the Supreme Court has found that evidence regarding its care goes only to the weight of the specimen as credible evidence. *Id.* In other words, where there is a weak link in the chain of custody, as opposed to a missing link, the question is only one of credibility and not admissibility. *Id.*

In his brief, Horton cites testimony by Officer Burgess and Sergeant Williford in support of his contention that the State failed to adequately prove the chain of custody of the urine sample. Officer Burgess did not recall: (1) whether he received the urine sample from Mobley or Officer Joye; (2) at what time he delivered the sample to the evidence locker; and (3) whether he stored the sample in his home refrigerator until he transported it to the evidence locker. Horton points to testimony by Sergeant Williford that, when he delivered the urine sample to SLED, the plastic container which held the urine sample was inside a Styrofoam container. Horton claims "[t]here was no testimony as to how the plastic container got into a styrofoam container."

Regardless, the identities of all persons handling Horton's urine sample were firmly established. *See Carter*, 344 S.C. at 424, 544 S.E.2d at 837. The persons who handled the evidence testified to a sufficient chain of custody. The State proved a continuous chain of custody through the testimony of all people who had control and possession of the evidence.

There is no missing link in the chain of custody. The trial judge did not abuse his discretion in finding a complete chain of custody and allowing the jury to consider the results of the urine test.

### C. Rule 403 Analysis

Horton claims the results of the urine test were more prejudicial than probative and should have been excluded by Rule 403, SCRE.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. A trial judge's decision regarding the comparative

probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances. *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003). We review a trial court's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment. *Id.*

The toxicologist's report confirming the presence of alcohol, THC, opiate derivatives, and cocaine metabolite in Horton's urine was certainly damaging to his case. However, we find this evidence was more probative than prejudicial in nature. The test results corroborate Officer Burgess's suspicion that, even though the Datamaster registered a legal alcohol level, Horton was under the influence. Furthermore, Horton was free to challenge the veracity of the test results. In fact, Horton advanced this argument at trial, eliciting testimony from two SLED toxicologists that it was impossible to determine whether Horton was under the influence of these drugs at the time of the accident.

Recently, the Court of Appeals, in *Kennedy v. Griffin,* 358 S.C. 122, 595 S.E.2d 248 (Ct.App.2004), analyzed the admissibility of evidence of marijuana usage in an automobile collision scenario. *Kennedy* is inapposite to the facts of the case at bar. Here, there is a definite correlation between the ingestion of the drugs and alcohol and the toxicology analysis. In *Kennedy,* the evidence offered was inconclusive and indefinite in regard to the impact on the individual ingesting the substance. The test results in this case corroborated Officer Burgess's observation of Horton.

The trial judge did not abuse his discretion in allowing the admission of the results of Horton's urine test. The probative nature of this evidence, especially when viewed in conjunction with Officer Burgess's testimony, far outweighs any prejudice. We note the admission of the urine test did not restrict Horton's ability to present an adequate defense, as he was still able to attack the test results.

III. Lack of Remorse/Constitutional Right to Remain Silent

Horton asserts the trial judge erred in allowing the State to present evidence of Horton's lack of remorse. We disagree.

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina." Rule 402, SCRE; *State v. Aleksey,* 343 S.C. 20, 538 S.E.2d 248 (2000). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Under Rule 401, evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy. *In the Matter of the Care and Treatment of Corley,* 353 S.C. 202, 577 S.E.2d 451 (2003); *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App. 2003).

The testimony in question concerns the following remarks by Officer Burgess:

During my conversations with him, as far as asking phone numbers and things like that, insurance information, that's all I was getting from Mr. Horton, he sat there unemotional.

. . . .

He sat there unemotional, no response whatsoever. His attitude and behavior just didn't add up to [the] reality of what had just happened.

Horton frames the issue as an error in regard to evidence that Horton lacked remorse. However, Horton professes that Officer Burgess' testimony was an improper comment on Horton's right to remain silent. Citing *State v. Reid,* 324 S.C. 74, 476 S.E.2d 695 (1996), *overruled on other grounds by State v. Watson,* 349 S.C. 372, 563 S.E.2d 336 (2002), Horton avers "this line of questioning was a comment on [Horton's] lack of remorse and therefore improper."

*Reid* edifies:

It is a violation of due process for a State to permit comment on a defendant's post-arrest silence since the giving of *Miranda* warnings might induce silence by implicitly assuring a defendant his silence will not be used against him. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *See also State v. Arther,* 290 S.C. 291, 350 S.E.2d 187 (1986); *State v. Smith,* 290 S.C. 393, 350 S.E.2d 923

(1986); *State v. Hale,* 284 S.C. 348, 326 S.E.2d 418 (Ct.App. 1985), *cert. denied,* 286 S.C. 127, 332 S.E.2d 533 (1985). References to a defendant's lack of remorse are also improper as violative of a defendant's Fifth, Eighth, and Fourteenth Amendment rights. *State v. Diddlemeyer,* 296 S.C. 235, 371 S.E.2d 793 (1988), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991); *State v. Cockerham,* 294 S.C. 380, 365 S.E.2d 22 (1988); *State v. Johnson,* 293 S.C. 321, 360 S.E.2d 317 (1987), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992) (comments by the prosecution upon an accused's failure to express remorse invite jury to draw an adverse inference merely because the defendant did not appear penitent); *State v. Sloan,* 278 S.C. 435, 298 S.E.2d 92 (1982). Here, the State was permitted to inquire both as to Reid's post-arrest silence and his lack of remorse; this inquiry was therefore clearly improper.

*Id.* at 78, 476 S.E.2d at 696.

Horton complains that the trial court should have suppressed Officer Burgess' observation and description of Horton at the accident scene. Horton sat in Officer Burgess' patrol vehicle approximately twenty to thirty minutes while the officer made an accident report. The officer noted a smell of alcohol about Horton's person. Horton appeared unemotional. Officer Burgess thought Horton was under the influence of something and arrested him. The State offered the officer's factual observations to support his opinion and conclusion that Horton was under the influence. "[I]t is well settled that a lay witness may testify whether or not in his opinion a person was drunk or sober on a given occasion on which he observed him and that the weight of such testimony is for determination by the jury." *State v. Ramey,* 221 S.C. 10, 13–14, 68 S.E.2d 634, 635 (1952).

The testimony was not presented as evidence of Horton's lack of remorse or as a comment on Horton's post-arrest silence. Rather, the testimony was presented for the purpose of illustrating Horton's actions and attitudes after the accident, and how his unemotional response to the events led Officer Burgess to believe he was under the influence. The challenged testimony was clearly relevant and admissible to

support the officer's decision to have Horton submit to both a Datamaster and urine test.

Concomitantly, the trial judge did not err in allowing Officer Burgess's testimony about Horton's attitude and behavior after the accident.

Based on our review of the record, we come to the ineluctable conclusion that the testimony of Officer Burgess is *NOT* a comment upon post-arrest silence nor an impermissible comment on the defendant's lack of remorse.

## CONCLUSION

Based upon the foregoing, Horton's conviction and sentence for reckless homicide are

**AFFIRMED.**

HEARN, C.J., and BEATTY, J., concur.